## Paul Arens, Appellee, v. Chicago Junction Railway Company, Appellant.

## Gen. No. 15,143.

1. CONTRIBUTORY NEGLIGENCE—*when car inspector not guilty of, as· a matter of law.* If a car inspector while performing his duties in the customary manner is injured by cars being kicked back without warning to him, even though he may have known that switching was apt to go on at any time he is not guilty of contributory negligence as a matter of law.

2. PERSONAL INJURIES—*who not mere licensee.* A car inspector engaged in the regular course of business in inspecting cars in the yards of the defendant, *held,* under the evidence, not a mere licensee, but as being in such yards by the defendant's invitation.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. WILLARD M. McEWEN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Affirmed. Opinion filed January 13, 1911. Rehearing denied January 24, 1911.

WINSTON, PAYNE, STRAWN & SHAW, for appellants; JOHN D. BLACK and JOHN C. SLADE, of counsel.

MARVIN E. BARNHART, for appellee.

MR. PRESIDING JUSTICE MACK delivered the opinion of the court.

This is an appeal from a judgment rendered on the verdict of a jury in favor of the appellee for $2,400 for personal injuries sustained by him, while working in appellant's yards as an inspector of the Pere Marquette Railroad Company.

The principal grounds urged for a reversal of the judgment are: 1st, that appellant was guilty of contributory negligence. 2nd, he was a mere licensee, to whom no duty was owing by defending other than to refrain from willfully and wantonly injuring him.

Appellant also contends that the court erred in re-

fusing certain instructions, and that a failure to ring bells was not, under the evidence, negligence.

1st. As to the contributory negligence. Plaintiff was in the performance of his duties inspecting cars in defendant's private switch yards. He had begun at the west end of extension track 5, examining the cars from the north side. When he reached the east end he crossed over and returning west examined them from the south side; then he turned south to the next track, extension track 7, and was pursuing the same course. He had just started to inspect the south side of the cars back to the west. He was at the east end of the car with his left hand holding to the grab iron, both feet on the outside of the rail, his body east of the east end of the car and his right foot close to the rail. He had stooped down to look lengthwise underneath the car, that being the customary and necessary manner of inspection, when the defendant company caused six Pere Marquette cars to be kicked from the west on to this track, these cars striking the string of cars on that track, the east one of which plaintiff was inspecting, with such force as to cause them to be instantly moved about a car length and a half. The plaintiff was knocked down and thrown around in such a way that his right foot was run over and so severely crushed that it had to be amputated at the ankle, leaving a part of the heel and the ankle joint, which is somewhat stiffened.

The evidence shows that plaintiff was performing his work in the customay manner, and if, as he testifies and as the jury were justified in believing, he had no warning that the cars were to be kicked back, even though he knew that switching was apt to go on at any time, we cannot say that the verdict of the jury negativing contributory negligence is so clearly unsupported by the weight of the evidence as to justify a reversal.

2nd. While cars destined for the Pere Marquette road were sent to a Y beyond these switch tracks,

the evidence clearly establishes that, under some arrangement with defendant, the cars were also delivered on tracks 5 and 7 when, as in this case, the Y was full, and that they were frequently there inspected. It is immaterial whether this was the customary or occasional method, or whether cars other than those of the Pere Marquette were also at times delivered on these two tracks. The evidence warranted the jury in believing that the inspection at these tracks was made in the regular course of business pursuant to the understanding of the two roads. Under these circumstances, plaintiff, while working as inspector for the Pere Marquette, was not a mere licensee, but was there by defendant's invitation, in the course of defendant's business as owner and possessor of the premises in which plaintiff's employer, under a business arrangement, was transacting its own business. The defendant, therefore, owed him a duty to exercise ordinary care.

While the testimony is conflicting as to the custom of ringing a bell so as to warn inspectors, before kicking back cars on these tracks, we cannot say, even after giving full weight to defendant's argument as to the improbability of ringing a bell for one purpose and one place, and not at another, that the jury were not justified by the preponderance of the evidence in believing plaintiff's version and in finding the defendant guilty of negligence in failing to give the customary warning.

An instruction limiting defendant's duty to one expressly authorized to be on its tracks, was properly refused. An implied authorization arising from the relations of the plaintiff's employer to the defendant, conferred the same rights and imposed the same obligations as an express authorization.

The other refused instruction was predicated upon plaintiff's duty to do certain specific acts for self protection, a duty which finds no support in the evidence.

Insofar as these instructions laid down correct principles of law, they were fully covered by other instructions given at defendant's request.

*Affirmed.*

MR. JUSTICE BALDWIN took no part in the decision of this case.